UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

NICHOLAS D'ANGELIS, MARINUS FRANCOIS, CHARLIE HOLLINGSWORTH, ROSITA SCARLETT, EDWIN JONES, ELIZABETH JONES, WILLIAM M. MILMON, SETH GARCIA, ROBERT J. BATTINIERI JR, CHERRYWOOD REID, SON T. DIEP, MARY ANN PORTER, TERRY HAACK, TAMMY HAACK, PATTY STURDIVANT, , RUTH COWLES, MARY K KARKLINS, LATRAVIUS SMITH, DENISE HARDY, ANDREA RUSSELL, IRENE TSILIMOS, MICHAEL TODD IRVAN, ERANDER M. GUSS, GERALD ROMAR, MARTINO PALLADINO, GIOVANNA PALLADINO, BIANCA ROBINSON, MARJORIE ANN CAESAR, MICHAEL ROBERTS, MARTHA ROBERTS, BOLANLE TOMIYE, LASHAWN ROBINSON, WINIFRED WAFER, RONALD F. MARQUARDT, LESLIE WILLIAMSON, MARK WILLIAMSON, JOHN T. LASSITER, EDDIE MCINTYRE, GENO BOBO, PAUL D. WAKLEE, JAMES BROSIOUS, JOHN SANGIS, HECTOR L. LEBRON, RALPH SARO, MATTHEW LINDSEY, HARRY D. LEIPHART, JAMES BEVAN, ROGER GAFFNEY, TINA GAFFNEY, JACQUELINE DARBY-JONES, SANTOSHA JACKSON, TYRONE JACKSON, LAURNA LEGREE, ARTHUR SATTERWHITE, MONICA SMITH, JOHN SMITH, MICHAEL JONES, HERMENEGILDA JONES, ALISHA MEDINA, ALICIA POWELL, ADELE M. STARKOVICH, ALANKA HANKERSON, RODNEY RICHARDS, JUAN LOZADA, SABRINA TAYLOR, ANGELA COLEMAN, , LYNETTE MCCOY, MATTHEW HOFF, MARK A. SMITH, BRENDA MARTIN, KEVIN MARTIN, GARY BELANGER, ANGELA HARTIS, SHANISE L. CALLAHAN, CHRISTOPHE SENAH, JONATHAN SAMUEL, BERTHA SAMUEL, BRIAN FARLEY, THOMAS FRANKYE, DERWIN WEST, CHERYL HARRISON-MURRAY, RICHARD K. THOMPSON, DEBORAH FRANCIS GAVIN, LEROY STOVER, MAYRA D. SUCRE-VALDES, KENNETH E. HILL, ANGELA GORDON, BRADLEY EVANS, LYNN YAICHNER, MARIA L. ROBERSON-FIELDS,

Case No.

**COMPLAINT**

**JURY TRIAL DEMANDED**

1

MARIE J. BLAIN, CARLOS ZAMBRANA, VARENE WILLIAMS, MARGARET JONES, BRUCE A. CLIFTON, HENRY WALKER, STEVEN FIELDS, JACKI L. FIELDS, ALPHONSE HARRIS JR., ANDREA HALL BELL, THOMAS MILLER, TWAN RHYNE, MARK TRUDEAU, JENNIFER L. TETE, LATONDA RICHARDSON, ANGELITA B. RODRIGUEZ, MYREI C. EDWARDS, PAMELA TARZIA-TYLER, CHRISTOPHER P. NOLAN, ROBERT DOUGLAS, DARRIN BAGWELL, SUSAN SULLIVAN, WAYNE JOHNSON, ESTELLE C. BERVINE, & JOHN ROES 1-100

                          Plaintiffs,
              -against-

BANK OF AMERICA, N.A., EVERHOME MORTGAGE COMPANY, GREEN TREE SERVICING LLC, BAYVIEW LOAN SERVICING LLC, M & T BANK CORPORATION, BRANCH BANKING AND TRUST COMPANY, NATIONSTAR MORTGAGE, LLC, & METLIFE HOME LOANS, LLC,

                          Defendants.
-----------------------------------------------------------------X


## **INTRODUCTION**

Plaintiffs Nicholas D'Angelis, *et al*, bring this action against Defendants Bank of America, N.A. ("Bank of America"), *et al*, for a variety of illegal actions pertaining to the creation and servicing of home mortgage loans.  Plaintiffs argue that they: (a) sought a loan modification agreement through Defendants, their agents, and successors-in-interests as servicers of Plaintiffs' loans but their various requests and applications were rejected, without proper justification, (b) were subjected to predatory lending practices inducing Plaintiffs to accept unduly burdensome loans, including gross misrepresentations and various failures to disclose information, and (c) were charged monthly mortgage payments without a legal basis to benefit

from those payments.  Plaintiffs allege common law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, promissory estoppel, fraudulent concealment, fraud for demanding and collecting monthly note payments under false pretense, unjust enrichment, and fraudulent inducement, as well as statutory violations under various state consumer protection statutes, the Federal Truth In Lending Act and the Real Estate Settlement Procedures Act.  Plaintiffs seek declaratory and injunctive relief, as well as damages, restitution and costs.

## STATEMENT OF FACTS

### A) Defendants' Fraudulent Loan Modification Process

1.       In late 2008, the United States Department of the Treasury instituted the Home Affordable Modification Program ("HAMP") under the Emergency Economic Stabilization Act of 2008, and later under the Financial Stability Act of 2009, to encourage lenders to modify home mortgages, lower monthly payments, and reduce the burden on homeowners, helping them avoid foreclosure and financial ruin. Defendants received financing from the Treasury Department in exchange for their participation in the HAMP program. Furthermore, all servicers of Fannie Mae or Freddie Mac owned loans are obligated to offer HAMP modifications to their respective eligible borrowers, regardless of whether such servicers participate in HAMP.  The same applies to the servicers of loans backed by the Federal Housing Administration ("FHA-HAMP"), and to the servicers of loans backed by the Veteran's Administration ("VA-HAMP").

2.       For a period ranging from months to several years prior to the commencement of this action, Plaintiffs' mortgages have been serviced by Defendants.  As a result of the severe national economic downturn, Plaintiffs had fallen behind on their monthly mortgage payments and went into default.

3.      Due to the individual hardships felt by them, Plaintiffs inquired about mortgage assistance and requested loan modifications through Defendants, which were only allowed once Plaintiffs went into default.

4.      Defendants either ignored such requests, or provided a modification application package to Plaintiffs detailing the terms of their offer.  This package required Plaintiffs to provide documentation necessary to process the modifications as a condition for the modification agreement.

5.      Defendants represented to Plaintiffs that, following the submission and review of a completed modification package, Plaintiffs would be given terms to make payments as part of a trial modification.  If Plaintiffs made the necessary monthly payments under the terms of the trial modification, a permanent modification would be perfected.

6.      Plaintiffs accepted the loan modification offers and worked to meet the terms required of them, expecting Defendants to be bound to perform their obligation of granting permanent modifications.

7.      Upon Plaintiffs' acceptance of Defendants' loan modification offers through performance specified in the terms of Defendants' offer, a contract was formed, binding Defendant servicers and originators and successors in interest.  *See*, *e.g.*, Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir.2012); Corvello v. Wells Fargo Bank, NA, 11-16234, 2013 WL 4017279 (9th Cir. Aug. 8, 2013).

8.      Plaintiffs either provided all of the requested documentation in support of their loan modification application to Defendants, and otherwise met all the conditions precedent pursuant to a trial modification offer, or attempted to do so in good faith, but faced substantial interference from Defendants.

9.     In these latter instances, Plaintiffs could not possibly comply with Defendants' conditions precedent, because Defendants put in place procedural safeguards to make the modification process as onerous and complicated as possible, shepherding Plaintiffs into foreclosure, even going so far as providing conflicting information to Plaintiffs regarding which information was received or still needed.  Defendants' policies were to intentionally delay the application and documentation process so that documents had to be resubmitted and deadlines passed.

10.     Even in instances where Plaintiffs provided all information and documentation as required in Defendants' initial document requests, Defendants still sent missing documentation requests, which often included documents previously sent by Plaintiffs.  Plaintiffs continued to provide the requested documents to Defendants despite having already submitted them on multiple prior occasions.

11.     Defendants' missing document requests constituted a policy to interfere with and overly burden Plaintiffs' compliance with modification terms, and were a result of deficient protocols within Defendants' loan modification operations.

12.     Some Plaintiffs were denied trial modifications on baseless claims that their financial status precluded them from being considered for a modification.

13.     In cases where trial modification was not given, Defendants either gave no explanation for the denial, or alleged that Plaintiffs did not provide the necessary documentation for processing or review.  Defendants' belief that conditions precedent were not satisfied was based on Defendants' own conflicting reports and inconsistent status updates, and the failure of Defendants' loss mitigation representatives to adequately conduct document intake.

14.     When Plaintiffs were able to overcome Defendants' obstacles and meet the conditions of the modification agreement by providing sufficient documentation according to Defendants, they were given terms to make modification payments on a trial basis.  Plaintiffs made the required payments under the terms of the offered trial modification.

15.     Following Plaintiffs' completion of the conditions specified in Defendants' offer, they often ultimately learned, sometimes only after inquiring, that a permanent modification was not provided.

16.     Defendants had no intention to grant a permanent modification, since it was not in Defendants' financial interest to do so.  Defendants nevertheless continued to collect trial payments, stripping as much remaining equity from Plaintiffs as possible, knowing that Plaintiffs were pre-destined for a permanent modification rejection.

17.     When a permanent modification was granted, Defendants included such disadvantageous terms that ultimately rendered Plaintiffs' performance impossible, frustrating the very purpose of loan modification, under HAMP or otherwise.  This included terms that failed to lower the monthly payment, added a decade to the term of the loan, or created unmanageable balloon payments at the end of the term of the loan.

**B)  Defendants' Conflicts of Interest**

18.     As a matter of common knowledge, Defendants have regularly obtained insurance or other contractual relationships in which losses through foreclosure or short sale (*i.e.*, when the homeowner-mortgagor loses his/her home) are paid in whole or in part to Defendants, in addition to the amount they realize in a foreclosure sale or short sale.  There are various types of these complex financial vehicles, including Credit Default Swaps ("CDS"), and Collateralized Debt

Obligations ("CDO").  Under both, the loss is determined by the outstanding amount of the loan as distinguished from what Defendants may have paid for the loan.

19.     Under the CDS/CDO scheme, Defendants only receive full reimbursements for their losses if the mortgaged property is sold through foreclosure sale or short sale, but not if the loan is modified, since modification does not qualify as default.  Therefore, modification of loans allowing Plaintiffs to stay in their homes is not in Defendants' pecuniary interest, and Defendants therefore have a motive to evade the performance of their modification obligations.

20.     Defendants have thus created an alarming conflict of interest as part of their loss-sharing agreements in the securitization of mortgages, incentivizing them to negotiate with the Plaintiffs in bad faith.

21.     The Plaintiffs suffered financial hardship resulting from the deteriorating economy, the decline in the market and rental value of real estate generally and the Plaintiffs' real property specifically, as well as related reductions in income.  Defendants have been aware of Plaintiffs' difficulties concerning their mortgage obligations at all relevant times through information provided by the Plaintiffs to Defendants or their agents and successors-in-interest.

22.     The Plaintiffs have the capacity to make monthly payments based on their notes, if those were restructured with a principal amount in line with the present value of the properties and at a lower interest rate, in line with current market rates.  Plaintiffs should have an option to do so, giving Defendants an amount in value equal to or greater than the amount they may legitimately realize through the sale in foreclosure of the properties securing the notes, as foreclosure sales typically produce a sale price below the fair market value, and carry extra costs.

23.     Under HAMP, lenders are required to conduct a Net Present Value calculation ("NPV") of the subject mortgage as modified, and as unmodified (*i.e.*, as sold through

foreclosure.)  When a modification has an NPV equal to, or greater than, the amount likely to be obtained from sale in foreclosure, lenders must offer a modification.  However, Defendants' CDS/CDO holdings create a financial offset beyond the amount that could reasonably be obtained through sale in foreclosure.  Therefore, unbeknownst to Plaintiffs, Defendants compare the modified NPV with an amount higher than would be realized through sale alone.

24.     These insurance-type transactions are not required to be reported or registered as insurance contracts in any state and thus occur with little to no transparency, so that specific information is only within the Defendants' knowledge.

25.     Consequently, Defendants have instituted companywide policies ensuring an absence of standards for determining who will be granted HAMP loan modifications by Defendants, and this applies to their in-house loan modification programs, as well.

26.     Upon information and belief, Defendants have and apply no standards for the awarding of payouts to homeowners pursuant to subsequent settlements with the Federal government, in which modification-related wrongdoing was found following the establishment of HAMP.  Defendants thus drive their inventory of loans into default and eventual foreclosure, allowing them to obtain payment on the undisclosed insurance taken out against the interests of the Plaintiffs and other homeowners/mortgagors.

27.     Defendants evaded requirements under any contract with Plaintiffs, the U.S. Treasury Department, U.S. Department of Housing and Urban Development (HUD), custom and usage in the banking industry, and even their own representations to Plaintiffs, to deal with Plaintiffs fairly and in good faith toward reasonable loan modification agreements of financially troubled loans, allowing Plaintiffs to remain in their homes.

28.     Upon information and belief, Defendants have had, and continue to have, a fraudulent loan modification program, purporting to offer the possibility of a loan modification agreement to the Plaintiffs and other homeowners, while driving them into default to enable Defendants to pursue foreclosure against those same homeowners.

29.     Defendants require homeowners to go into default to be eligible for loan relief or modification.  Defendants then repudiate their obligations or frustrate Plaintiffs' performance under the loan modification contracts, and sell the mortgaged properties without judicial proceedings in most states, or after drawing homeowners into defaulting in foreclosure actions against them in other states.

30.     Consequently, Defendants sell the mortgaged residential properties at distress prices substantially below the fair market value, while cashing in on the undisclosed, offsetting insurance arrangements, awarding them the entire loan balance.  This incentivizes Defendants to remove Plaintiffs from their homes through sale of the property, rather than giving homeowners a loan modification agreement to keep them in their homes, as Defendants invariably represent to Plaintiffs through Defendants' marketing materials and communications.

31.     The dual-track process that Defendants have pursued, continue to pursue, or would pursue, in their business dealings with the Plaintiffs is not, nor is it intended to be, a good faith attempt to perform under their loan modification obligations.  Instead, it is a ruse used by Defendants to convince Plaintiffs that there is a fair opportunity for them to obtain a reasonable loan modification agreement when in fact there is no such opportunity.

32.     Defendants thus falsely led the Plaintiffs and others similarly situated to believe that there was hope for a loan modification agreement and no threat of foreclosure, deterring

them through misrepresentation for an extended period from seeking alternative refinancing or selling their property at the highest price.

**C) Defendants' Predatory Lending Behavior and Loan Review Process**

33.     A major aspect of Defendants' deceptive and predatory lending practices occurred during the origination of Plaintiffs' loans.  Defendants had a mendacious practice of offering loans with terms that would never have been accepted by Plaintiffs based on their financial means, had it not been for Defendants' misrepresentation of material terms.

34.     To further induce Plaintiffs to accept certain loans pressed upon them, Defendant Originators assured Plaintiffs that housing prices would continue to rise and made other general misrepresentations as to the stability of the housing market.

35.     At the time of Plaintiffs' loan's inception, their actual financial documents were insufficiently relied upon as part of their loan applications from Defendants.   Defendants consistently preyed upon Plaintiffs by providing loans unsuitable to Plaintiffs' incomes at the time, or in the foreseeable future.  Defendants thus intentionally ignored established safeguards put in place to ensure that the loans were appropriate for the respective borrowers.

36.     Plaintiffs' applications served as after-the-fact justification for Defendants making the loans once Plaintiffs had each already been individually approved for their respective loans.

37.     As part of this policy, Defendants often did not require Plaintiffs applying for a mortgage to provide sufficient documentation, such as pay stubs, bank statements, or tax returns, to document and prove their income.  Instead, Defendants encouraged and accepted the bear-bones loan applications without conducting the proper due diligence required to determine whether Plaintiffs were qualified to receive each of their individual loans. No additional information was required at mortgage closing, as well.

38.     Furthermore, Defendants offered loans at higher rates, and/or with higher origination fees, for borrowers who could not show income sufficient to qualify for the loans. The only reasonable explanation for Defendants' higher rates for those loans, is that Defendants determined that the risk in such loans was higher, since Defendants themselves did not believe in the veracity of the incomes stated, even as they were actively eliciting those statements.

39.     As part of this cursory loan application review process, Defendants either negligently or willfully approved Plaintiffs for loans, when it should have been apparent to Defendants' underwriters that default was a likely outcome.

40.     Defendants offered and recommended certain loans to Plaintiffs, while simultaneously assuring that Plaintiffs could easily sell or refinance their homes at any time for more favorable terms, if they ever did find themselves in a position where the loan became too difficult to maintain.   In so doing, Defendants abused their superior bargaining position, improperly and disingenuously speculating that the housing market would continue to grow at a similar rate, while simultaneously planning for the opposite to occur.

41.     Defendants had sufficient information that the housing market was due for a severe downturn.

42.     As Plaintiffs became overwhelmed by these oppressive obligations on homes whose values dropped sharply after the nationwide real estate market collapse, Defendants benefitted through their concealment and misrepresentation.

**D) Defendants' Failure to Disclose**

43.     Defendants offered several types of loans, including fixed-rate loans, adjustable rate loans, and adjustable-rate pay option loans, the latter containing a negative amortization feature, where permissible payments were insufficient to cover the interest on the principal of the

loan.  Despite the varying nature of the offered loans, the individual implications of each type of loan were not adequately conveyed to the Plaintiffs, especially their long-term ramifications, including default and foreclosure.

44.    Negatively amortized loans allow Plaintiffs to pay less than the full accrued interest, while unpaid interest is added to the loan principal so that the principal increased, instead of decreasing as normally occurs with an amortized mortgage loan, also resulting in higher future payments.

45.    Defendants marginalized the fact that the negative amortization feature could make the loan difficult to refinance, as the principal amount would be substantially higher than at origination, making it harder for borrowers to qualify, or that home values were likely to decline, or that there were significant prepayment penalties.

46.    These types of adjustable rate loans were particularly profitable for Defendants, and upon information and belief, Defendants used incentives to motivate its internal personnel to market these loans.  Through increased compensation, loan officers were encouraged to sell adjustable rate mortgages with higher margins or above-par rates, which ultimately put borrowers into higher cost, riskier loans.  Plaintiffs never had, nor do they now, access to such pay schedules.  Nevertheless, this practice is a matter of common knowledge within the district.

47.    Defendants stressed adjustable rate loan's low payments in the early years, known as "teaser rates," and downplayed the inevitable payment shock that would be felt by the borrower when the payments increased.  This was done although Defendants' had no reason to believe that Plaintiffs' income would increase in a similar fashion.

48.     As detailed herein, these types of loans would ultimately become increasingly expensive for the borrowers, until they could not be afforded, driving the borrowers deeper into debt without taking out any additional loans.

49.     Plaintiffs entered into these agreements because the implications were intentionally inadequately disclosed to them by Defendants' agents.

50.     Upon information and belief, Plaintiffs were steered into loans not suitable for their individual financial situations.  Defendants should have advised against these mortgages if the loan applications were reviewed with proper diligence and care.

51.     Instead, Defendants relied on misrepresentations and deceitful practices while maintaining the aforementioned incentive program that provided higher commissions to loan officers who pushed the riskier, more profitable loans.

52.     The omission of important information in Defendants' representations put Plaintiffs in a far worse position than they would have been had they not taken a loan from Defendants.  Plaintiffs became saddled with onerous obligations that quickly became unaffordable due to either undisclosed payment information like escrow amounts, or variable payment terms.  Some Plaintiffs lost their homes.

53.     Defendants clearly instituted companywide policies designed to maneuver Plaintiffs into these loans regardless of whether they ultimately qualified for them, with the goal of obtaining greater profits through adjustable rates, negative amortizations, or higher rates than could be afforded, all allowing for greater interest amounts paid to Defendants.

54.     Upon learning of various predatory practices and potentially illegal abuses, Plaintiffs submitted Qualified Written Requests ("QWR") under the Real Estate Settlement Procedures Act ("RESPA"), 12 USC § 2605(e), as detailed below.

55.     In these QWRs, Plaintiffs formally disputed the validity of their current debts with Defendants and requested all available information pertaining to their loans to determine what misrepresentations and failures to disclose occurred, as well as whether the loan origination, accounting of payments and fees, and ownership details had been proper.

56.     To date, and far beyond the sixty days required under Section 6 of RESPA, Defendants have failed to sufficiently comply with the QWRs in a meaningful way, or to attempt in any way to resolve the issues about which Plaintiffs complained.  Defendants also have not provided an adequate reason for their refusal to do so.

## JURISDICTION AND VENUE

57.     This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332, because this action is between citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

58.     This Court has personal jurisdiction over Defendants because a substantial portion of the wrongdoing alleged herein took place in New York.  Defendants are authorized to do business in New York and have sufficient minimum contacts with New York through the promotion, marketing, servicing of loans, and actively participating in the securitization of their mortgages in New York, so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

59.     Venue is proper in this District under 28 U.S.C. § 1391(a)-(c), because Defendants transact business, maintain offices, and are otherwise found within this District; and the Defendants' unlawful acts giving rise to some of Plaintiffs' claims occurred, and a substantial portion of the affected trade and commerce described herein, have been carried out in this District.

## THE PARTIES

60.     Plaintiff Nicholas D'Angelis is an individual and a resident of the State of New York.   Plaintiff D'Angelis owns the premises known as and located at 63 Aster Avenue, Holtsville, New York 11742.   Plaintiff D'Angelis executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

61.     Plaintiff Charlie Hollingsworth is an individual and a resident of the State of New York.   Plaintiff Hollingsworth owns the premises known as and located at 3713 Rombouts Avenue, Bronx, New York 10466.   Plaintiff Hollingsworth executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

62.     Plaintiff Rosita Scarlett is an individual and a resident of the State of New York. Plaintiff Scarlett owns the premises known as and located at 155 Storer Avenue, New Rochelle, New York 10801.   Plaintiff Scarlett executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

63.     Plaintiffs Edwin and Elizabeth Jones are individuals and residents of the State of Alabama.   Plaintiffs Jones owned the premises known as and located at 177 Thompson Calloway Road, Albertville, Alabama, 35950.   Plaintiffs Jones executed a promissory note to Bank of America, N.A., which was secured by a mortgage against these premises.   Said mortgage was serviced by Defendant Bank of America, N.A. until the Plaintiffs lost this home in foreclosure on or about November 1st, 2012.

64. Plaintiff William M. Milmon is an individual and a resident of the State of Arkansas. Plaintiff Milmon owns the premises known as and located at 607 Aspen Place, Prairie Grove, Arkansas, 72753. Plaintiff Milmon executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

65. Plaintiff Seth Garcia is an individual and a resident of the State of Arizona. Plaintiff Garcia owns the premises known as and located at 2004 E 9th Street, Douglas, Arizona, 85607. Plaintiff Garcia executed a promissory note to Bank of America, N.A. which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

66. Plaintiff Robert J. Battinieri, Jr. is an individual and a resident of the State of Delaware. Plaintiff Battinieri owns the premises known as and located at 3 Croydon Court, Bear, Delaware, 19701. Plaintiff Battinieri executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

67. Plaintiff Cherrywood Reid is an individual and a resident of the State of Delaware. Plaintiff Reid owns the premises known as and located at 9182 Herring Branch, Lincoln, Delaware, 19960. Plaintiff Reid executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

68. Plaintiff Son T. Diep is an individual and a resident of the State of Florida. Plaintiff Diep owns the premises known as and located at 221 N James Avenue, Panama City, Florida, 32401. Plaintiff Diep executed a promissory note to Bank of America, N.A., which is

secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

69.     Plaintiff Mary Ann Porter is an individual and a resident of the State of Florida. Plaintiff Porter owns the premises known as and located at 27153 Green Willow Run, Wesley Chapel, Florida, 33544.  Plaintiff Porter executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

70.     Plaintiffs Terry and Tammy Haack are individuals and residents of the State of Georgia.  Plaintiffs Haack own the premises known as and located at 339 Bartlett Drive, Sharpsburg, Georgia 30277.  Plaintiffs Haack executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

71.     Plaintiff Patty Sturdivant is an individual and a resident of the State of Georgia. Plaintiff Sturdivant owns the premises known as and located at 1554 Keystone Drive, Conley, Georgia 30288.  Plaintiff Sturdivant executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

72.     Plaintiff Latravius Smith is an individual and a resident of the State of Georgia. Plaintiff Smith owns the premises known as and located at 2481 Kensington Road, Macon, Georgia, 31211.  Plaintiff Smith executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

73.     Plaintiff Ruth Cowles is an individual and a resident of the State of Illinois. Plaintiff Cowles owns the premises known as and located at 1429 Regent Lane, Ford Heights, Illinois, 60411.  Plaintiff Cowles executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

74.     Plaintiff Mary K. Karklins is an individual and a resident of the State of Illinois. Plaintiff Karklins owned the premises known as and located at 4544 N Anton Avenue, Chicago, Illinois, 60656.  Plaintiff Karklins executed a promissory note to Bank of America, N.A., which was secured by a mortgage against these premises.  Said mortgage was serviced by Defendant Bank of America, N.A. Plaintiff Karklins lost this property in foreclosure on January 15, 2013.

75.     Plaintiff Denise Hardy is an individual and a resident of the State of Illinois. Plaintiff Hardy owns the premises known as and located at 17142 Bernadine Street, Lansing, Illinois, 60438.  Plaintiff Hardy executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

76.     Plaintiff Andrea Russell is an individual and a resident of the State of Indiana. Plaintiff Russell owns the premises known as and located at 1864 N Brazil Avenue, Indianapolis, Indiana, 46219.  Plaintiff Russell executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

77.     Plaintiff Irene Tsilimos is an individual and a resident of the State of Indiana. Plaintiff Tsilimos owns the premises known as and located at 6413 Oyster Key Lane, Plainfield, Indiana, 46168.  Plaintiff Tsilimos executed a promissory note to Bank of America, N.A., which

is secured by a mortgage against these premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

78.     Plaintiff Michael Todd Irvan is an individual and a resident of the State of Kentucky.  Plaintiff Irvan owns the premises known as and located at 846 Main Street, Paducah, Kentucky, 42003.  Plaintiff Irvan executed a promissory note to Wells Fargo Bank, N.A., which is secured by a mortgage against these premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

79.     Plaintiff Erander M. Guss is an individual and a resident of the State of Louisiana. Plaintiff Guss owns the premises known as and located at 1443 N Prieur Street, New Orleans, Louisiana, 70116.  Plaintiff Guss executed a promissory note to Wells Fargo Bank, N.A. which is secured by a mortgage against these premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

80.     Plaintiff Gerald Romar is an individual and a resident of the State of Louisiana. Plaintiff Romar owns the premises known as and located at 167 April Lane, Port Barre, Louisiana, 70577.  Plaintiff Romar executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.   Said mortgage is currently serviced by Defendant Bank of America, N.A.

81.     Plaintiff Martino Palladino is an individual and a resident of the State of Massachusetts.  Plaintiff M. Palladino owns the premises known as and located at 86 Lanesboro Road, Worcester, Massachusetts, 01606.  Plaintiff M. Palladino executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

82. Plaintiff Giovanna Palladino is an individual and a resident of the State of Massachusetts. Plaintiff G. Palladino owns the premises known as and located at 86 Lanesboro Road, Worcester, Massachusetts, 01606. Plaintiff G. Palladino executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

83. Plaintiff Bianca Robinson is an individual and a resident of the State of Massachusetts. Plaintiff Robinson owns the premises known as and located at 88 Pond Street, Randolph, Massachusetts, 02368. Plaintiff Robinson executed a promissory note to Prospect Mortgage, LLC which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

84. Plaintiff Marjorie Ann Caesar is an individual and a resident of the State of Maryland. Plaintiff Caesar owns the premises known as and located at 2890 Buck Lodge Road, Hyattsville, Maryland, 20783. Plaintiff Caesar executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

85. Plaintiff Marinus Francois is an individual and a resident of the State of New York. Plaintiff Francois owns the premises known as and located at 731 Beach Avenue, Bronx, New York, 10473. Plaintiff Francois executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

86. Plaintiffs Michael and Martha Roberts are individuals and residents of the State of Maryland. Plaintiffs Roberts own the premises known as and located at 824 Sue Grove Road, Essex, Maryland, 21221. Plaintiffs Roberts executed a promissory note to Bank of America,

N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

87.      Plaintiff Bolanle Tomiye is an individual and a resident of the State of Maryland. Plaintiff Tomiye owns the premises known as and located at 11014 Pelican Drive, Upper Marlboro, Maryland, 20772. Plaintiff Tomiye executed a promissory note to Bank of America, N.A, which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Green Tree Servicing LLC. Plaintiff Tomiye also owns the premises known as and located at 1832 Hope Street, Baltimore, Maryland, 21202.  Plaintiff Tomiye executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Everhome Mortgage Company

88.      Plaintiff Lashawn Robinson is an individual and a resident of the State of Michigan.  Plaintiff Robinson owned the premises known as and located at 7148 Coral Drive, Romulus, Michigan, 48174.  Plaintiff Robinson executed a promissory note to Bank of America, N.A., which was secured by a mortgage against these premises.  Said mortgage was serviced by Defendant Bank of America, N.A.  Plaintiff Robinson lost this property in foreclosure on June 8, 2013.

89.      Plaintiff Winifred Wafer is an individual and a resident of the State of Michigan. Plaintiff Wafer owns the premises known as and located at 5848 2nd Street, Romulus, Michigan, 48174.  Plaintiff Wafer executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

90.      Plaintiff Ronald F. Marquardt is an individual and a resident of the State of Montana.  Plaintiff Marquardt owns the premises known as and located at 33258 Ashley Lane,

Polson, Montana, 59860.  Plaintiff Marquardt executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

91.     Plaintiffs Leslie and Mark Williamson are individuals and residents of the State of North Carolina.  Plaintiffs Williamson owned the premises known as and located at 1760 Summit Ridge Lane, Kannapolis, North Carolina, 28083.  Plaintiffs Williamson executed a promissory note to Bank of America, N.A., which was secured by a mortgage against these premises.  Said mortgage was serviced by Defendant Bank of America, N.A. Plaintiff L. Williamson lost this property in foreclosure on June 3, 2013.

92.     Plaintiff John T. Lassiter is an individual and a resident of the State of North Carolina.  Plaintiff Lassiter owns the premises known as and located at 9973 Rockfish Road, Raeford, North Carolina, 28376.  Plaintiff Lassiter executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

93.     Plaintiff Eddie McIntyre is an individual and a resident of the State of North Carolina.  Plaintiff McIntyre owns the premises known as and located at 27640 North Turnpike Road, Wagram, North Carolina, 28396.  Plaintiff McIntyre executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

94.     Plaintiff Geno Bobo is an individual and a resident of the State of North Carolina.  Plaintiff Bobo owns the premises known as and located at 16530 Falconry Way, Charlotte, North Carolina, 28278.  Plaintiff Bobo executed a promissory note to Bank of America, N.A., which is

secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

95.     Plaintiff Paul D. Waklee is an individual and a resident of the State of North Dakota.  Plaintiff Waklee owns the premises known as and located at 1521 3rd Avenue North, Fargo, North Dakota, 58102.  Plaintiff Waklee executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A. Plaintiff Waklee executed a second promissory note to Green Tree Servicing, LLC which is secured by a mortgage against the premises. Said Mortgage is currently serviced by Defendant Green Tree Servicing, LLC.

96.     Plaintiff John Sangis is an individual and a resident of the State of New Jersey. Plaintiff Sangis owns the premises known as and located at 8 Post Brook Road S, West Milford, New Jersey, 07480.  Plaintiff Sangis executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

97.     Plaintiff James Brosious is an individual and a resident of the State of New Jersey.  Plaintiff Brosious owns the premises known as and located at 208 W Washington Avenue, Magnolia, New Jersey.  Plaintiff Brosious executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

98.     Plaintiff Hector L. Lebron is an individual and a resident of the State of New Jersey.  Plaintiff Lebron owns the premises known as and located at 317 Magnolia Avenue, Elizabeth, New Jersey, 07206.  Plaintiff Lebron executed a promissory note to Bank of America,

N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Green Tree Servicing, LLC.

99.     Plaintiff Ralph Saro is an individual and a resident of the State of New Jersey. Plaintiff Saro owns the premises known as and located at 597 Harristown Road, Glen Rock, New Jersey, 07452.  Plaintiff Saro executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

100.     Plaintiff Matthew Lindsey is an individual and a resident of the State of Nevada. Plaintiff Lindsey owns the premises known as and located at 7228 Pisa Avenue, Las Vegas, Nevada, 89130.  Plaintiff Lindsey executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

101.     Plaintiff Harry D. Leiphart is an individual and a resident of the State of Pennsylvania.  Plaintiff Leiphart owns the premises known as and located at 39 New Bridgeville Road, Wrightsville, Pennsylvania, 17368.  Plaintiff Leiphart executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

102.     Plaintiff James Bevan is an individual and a resident of the State of South Carolina.  Plaintiff Bevan owns the premises known as and located at 9 Cape Jasmine Street, Bluffton, South Carolina, 29910.  Plaintiff Bevan executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

103.    Plaintiff Roger and Tina Gaffney are individuals and residents of the State of South Carolina.  Plaintiffs Gaffney own the premises known as and located at 541 Dobson Downs Court, Mayo, South Carolina, 29368.  Plaintiffs Gaffney executed a promissory note to Nationstar Mortgage, LLC, which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

104.    Plaintiff Jacqueline Darby-Jones is an individual and a resident of the State of Texas.  Plaintiff Darby-Jones owns the premises known as and located at 8216 Edgepoint Trail, Hurst, Texas, 76053.  Plaintiff Darby-Jones executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

105.    Plaintiff Santosha Jackson is an individual and a resident of the State of Texas.  Plaintiff S. Jackson owns the premises known as and located at 1507 Bricknell Drive, Glen Heights, Texas, 75154.  Plaintiff S. Jackson executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

106.    Plaintiff Tyrone Jackson is an individual and a resident of the State of Texas.  Plaintiff T. Jackson owns the premises known as and located at 1507 Bricknell Drive, Glen Heights, Texas, 75154.  Plaintiff T. Jackson executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

107.    Plaintiff Laurna Legree is an individual and a resident of the State of Texas.  Plaintiff Legree owns the premises known as and located at 445 Capricorn Street, Cedar Hill, Texas, 75104.  Plaintiff Legree executed two promissory notes to Bank of America, N.A., which

are secured by a mortgage against these premises. Said mortgages are currently serviced by Defendant Bank of America, N.A.

108.    Plaintiff Arthur Satterwhite is an individual and a resident of the State of Texas. Plaintiff Satterwhite owns the premises known as and located at 7223 Magnolia Bluff, San Antonio, Texas, 78218. Plaintiff Satterwhite executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

109.    Plaintiffs Monica and John Smith are individuals and residents of the State of Texas. Plaintiffs Smith own the premises known as and located at 4102 Autumn View Drive, Houston, Texas, 78048. Plaintiffs Smith executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

110.    Plaintiff Derwin West is an individual and a resident of the State of Texas. Plaintiff West owns the premises known as and located at 2427 Silverado Trail, Grand Prairie, Texas, 75052. Plaintiff West executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

111.    Plaintiff Michael Jones is an individual and a resident of the State of Virginia. Plaintiff M. Jones owns the premises known as and located at 5902 E Surrey Hill Place, Springfield, Virginia, 22152. Plaintiff M. Jones executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

112.    Plaintiff Hermenegilda Jones is an individual and a resident of the State of Virginia.  Plaintiff H. Jones owns the premises known as and located at 5902 E Surrey Hill Place, Springfield, Virginia, 22152.  Plaintiff H. Jones executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

113.    Plaintiff Alisha Medina is an individual and a resident of the State of Virginia.  Plaintiff Medina owns the premises known as and located at 1204 Nesbitt Court, Virginia Beach, Virginia, 23453.  Plaintiff Medina executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

114.    Plaintiff Alicia Powell is an individual and a resident of the State of Virginia.  Plaintiff Powell owns the premises known as and located at 4957 N Waterside Drive, Lanexa, Virginia, 23089.  Plaintiff Powell executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

115.    Plaintiff Cheryl Harrison-Murray is an individual and a resident of the State of Maryland.  Plaintiff Harrison-Murray owns the premises known as and located at 4205 Bedford Road, Pikesville, Maryland, 21208.  Plaintiff Harrison-Murray executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

116.    Plaintiff Richard K. Thompson is an individual and a resident of the State of Maryland.  Plaintiff Thompson owns the premises known as and located at 9607 Muirfield Drive, Upper Marlboro, Maryland, 20772.  Plaintiff Thompson executed a promissory note to

Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

117. Plaintiff Deborah Francis Gavin is an individual and a resident of the State of Maryland. Plaintiff Francis Gavin owns the premises known as and located at 840 Weverton Road, Knoxville, Maryland, 21758. Plaintiff Francis Gavin executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

118. Plaintiff Leroy Stover is an individual and a resident of the State of Maryland. Plaintiff Stover owns the premises known as and located at 7501 Riverdale Road, New Carlton, Maryland, 20784. Plaintiff Stover executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

119. Plaintiff Kenneth E. Hill is an individual and a resident of the State of Georgia. Plaintiff Hill owns the premises known as and located at 3712 Bansbury Place, Hephzibah, Georgia, 30815. Plaintiff Hill executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

120. Plaintiff Alanka Hankerson is an individual and a resident of the State of Washington. Plaintiff Hankerson owns the premises known as and located at 20345 105th Court SE, Kent, Washington, 98031. Plaintiff Hankerson executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Bank of America, N.A.

121.     Plaintiff Rodney Richards is an individual and a resident of the State of West Virginia.  Plaintiff Richards owns the premises known as and located at 336 Murphytown Circle, Davisville, West Virginia, 26142.  Plaintiff Richards executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

122.     Plaintiff Lynn Yaichner is an individual and a resident of the State of Massachusetts.  Plaintiff Yaichner owns the premises known as and located at 28 Morgan Road, Hubbardston, Massachusetts, 01452.  Plaintiff Yaichner executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Bank of America, N.A.

123.     Plaintiff Juan Lozada is an individual and a resident of the State of Illinois.  Plaintiff Lozada owns the premises known as and located at 405 East Crest Avenue, Bensenville, Illinois, 60106.  Plaintiff Lozada executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Everhome Mortgage Company.

124.     Plaintiff Sabrina Taylor is an individual and a resident of the State of Florida.  Plaintiff Taylor owns the premises known as and located at 21409 NW 13th Court, Miami Gardens, Florida, 33169.  Plaintiff Taylor executed a promissory note to Everhome Mortgage Company, which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Everhome Mortgage Company.

125.     Plaintiff Angela Coleman is an individual and a resident of the State of Kansas.  Plaintiff Coleman owns the premises known as and located at 12340 Farrow Avenue, Kansas City, Kansas, 66109.  Plaintiff Coleman executed a promissory note to Bank of America, N.A.,

which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Everhome Mortgage Company.

126.    Plaintiff Lynette Mccoy is an individual and a resident of the State of Illinois. Plaintiff Mccoy owns the premises known as and located at 3370 W Brooke Avenue #105, Waukegan, Illinois, 60087.  Plaintiff Mccoy executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Green Tree Servicing LLC.

127.    Plaintiff Matthew Hoff is an individual and a resident of the State of Indiana. Plaintiff Hoff owns the premises known as and located at 4025 Brooksville Road, Indianapolis, Indiana, 46201.  Plaintiff Hoff executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Green Tree Servicing LLC.

128.    Plaintiff Mark A. Smith is an individual and a resident of the State of Indiana. Plaintiff Smith owns the premises known as and located at 53444 Ash Road, Granger, Indiana, 46530.  Plaintiff Smith executed a promissory note to Bank of America NA., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Green Tree Servicing LLC.

129.    Plaintiffs Kevin and Brenda Martin are individuals and residents of the State of Maryland.  Plaintiffs Martin own the premises known as and located at 167 South Meadow Drive, Glen Burnie, Maryland, 21060.  Plaintiffs Martin executed a promissory note to Green Tree Servicing, LLC which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Green Tree Servicing LLC.

130.    Plaintiff Gary Belanger is an individual and a resident of the State of Maine. Plaintiff Belanger owns the premises known as and located at 274 East Buckfield Road, Buckfield, Maine, 04220.  Plaintiff Belanger executed a promissory note to Bank of America N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Green Tree Servicing LLC.

131.    Plaintiff Angela Hartis is an individual and a resident of the State of North Carolina.  Plaintiff Hartis owns the premises known as and located at 7035 Quail Park Drive, Mint Hill, North Carolina, 28227.  Plaintiff Hartis executed a promissory note to Flagstar Bank FSB, which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Green Tree Servicing LLC.

132.    Plaintiff Shanise L. Callahan is an individual and a resident of the State of New Jersey.  Plaintiff Callahan owns the premises known as and located at 504 St. Thomas Drive, Egg Harbor, New Jersey, 08234.  Plaintiff Callahan executed a promissory note to Bank of America N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Green Tree Servicing LLC.

133.    Plaintiff Christophe Senah is an individual and a resident of the State of Oregon. Plaintiff Senah owns the premises known as and located at 2419 NE Saratoga Street, Portland, Oregon, 97211.  Plaintiff Senah executed a promissory note to Green Tree Servicing LLC, which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Green Tree Servicing LLC.

134.    Plaintiffs Jonathan and Bertha Samuel are individuals and residents of the State of South Carolina.  Plaintiffs Samuel own the premises known as and located at 221 Mitchell Drive, St. Stephan, South Carolina, 29479.  Plaintiffs Samuel executed a promissory note to Green Tree

Servicing LLC, which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Green Tree Servicing LLC.

135.    Plaintiff Brian Farley is an individual and a resident of the State of South Carolina. Plaintiff Farley owns the premises known as and located at 187 Tillbrook Court, Fountain Inn, South Carolina, 29644. Plaintiff Farley executed a promissory note to Green Tree Servicing LLC, which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Green Tree Servicing LLC.

136.    Plaintiff Thomas Frankye is an individual and a resident of the State of Texas. Plaintiff Frankye owns the premises known as and located at 14883 Foxbriar Lane, Frisco, Texas, 75035. Plaintiff Frankye executed a promissory note to Bank of America N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Green Tree Servicing LLC.

137.    Plaintiff Mayra D. Sucre-Valdes is an individual and a resident of the State of Maryland. Plaintiff Sucre-Valdes owns the premises known as and located at 12 Hyacinth Court, Gaithersburg, Maryland, 20878. Plaintiff Sucre-Valdes executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. The note then transferred to M&T Bank and said mortgage is currently serviced by Defendant Bayview Loan Servicing, LLC.

138.    Plaintiff Angela Gordon is an individual and a resident of the State of Maryland. Plaintiff Gordon owns the premises known as and located at 6405 Woodland Road, Morningside, Maryland, 20746. Plaintiff Gordon executed a promissory note to US Mortgage Finance Corp., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Branch Banking and Trust Company.

139.    Plaintiff Adele M. Starkovich is an individual and a resident of the State of Washington.  Plaintiff Starkovich owns the premises known as and located at 819 21st Street, Anacortes, Washington, 98221.  Plaintiff Starkovich executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

140.    Plaintiff Bradley Evans is an individual and a resident of the State of Maryland.  Plaintiff Evans owns the premises known as and located at 1402 Benjamin Street, Baltimore, Maryland, 21230.  Plaintiff Evans executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

141.    Plaintiff Maria L. Roberson-Fields is an individual and a resident of the State of Florida.  Plaintiff Roberson-Fields owns the premises known as and located at 702 N.E. 27th Street, Ocala, Florida, 34470.  Plaintiff Roberson-Fields executed a promissory note to Nationstar Mortgage, LLC which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

142.    Plaintiff Marie J. Blain is an individual and a resident of the State of Florida.  Plaintiff Blain owns the premises known as and located at 4752 Pilgrims Way, Orlando, Florida, 32808.  Plaintiff Blain executed a promissory note to Nationstar Mortgage, LLC which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

143.    Plaintiff Carlos Zambrana is an individual and a resident of the State of Florida.  Plaintiff Zambrana owns the premises known as and located at 1555 North Treasure Drive, North Bay Village, Florida, 33141.  Plaintiff Zambrana executed a promissory note to Nationstar

Mortgage, LLC which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

144.    Plaintiff Varene Williams is an individual and a resident of the State of Florida. Plaintiff Williams owns the premises known as and located at 908 Edward Avenue, Lehigh Acres, Florida, 33936. Plaintiff Williams executed a promissory note to Nationstar Mortgage, LLC which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

145.    Plaintiff Margaret Jones is an individual and a resident of the State of Georgia. Plaintiff Jones owns the premises known as and located at 2774 Tommy Lee Cook Road, Newnan, Georgia, 30623. Plaintiff Jones executed a promissory note to Nationstar Mortgage, LLC, which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

146.    Plaintiff Bruce A. Clifton is an individual and a resident of the State of Illinois. Plaintiff Clifton owns the premises known as and located at 922 North 6th Street, Springfield, Illinois, 62702. Plaintiff Clifton executed a promissory note to Bank of America N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

147.    Plaintiff Henry Walker is an individual and a resident of the State of Illinois. Plaintiff Walker owns the premises known as and located at 15139 South Ashland Avenue, Harvey, Illinois, 60426. Plaintiff Walker executed a promissory note to Aurora Bank FSB, which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

148.    Plaintiff Steven Fields is an individual and a resident of the State of Illinois. Plaintiff S. Fields owns the premises known as and located at 702 North Pearlt Street, Havana, Illinois, 62644.  Plaintiff S. Fields executed a promissory note to Nationstar Mortgage, LLC which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

149.    Plaintiff Jacki Fields is an individual and a resident of the State of Illinois. Plaintiff J. Fields owns the premises known as and located at 702 North Pearlt Street, Havana, Illinois, 62644.  Plaintiff J. Fields executed a promissory note to Nationstar Mortgage, LLC which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

150.    Plaintiff Alphonse Harris JR. is an individual and a resident of the State of Louisiana.  Plaintiff Harris owns the premises known as and located at 117 Dexter Drive, Westwego, Louisiana, 70094.  Plaintiff Harris executed a promissory note to Bank of America N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

151.    Plaintiff Andrea Hall Bell is an individual and a resident of the State of Maryland. Plaintiff Hall Bell owns the premises known as and located at 2852 Shanandale Drive, Silver Springs, Maryland, 20904.  Plaintiff Hall Bell executed a promissory note to Nationstar Mortgage, LLC, which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

152.    Plaintiff Thomas Miller is an individual and a resident of the State of Maryland. Plaintiff Miller owns the premises known as and located at 119 Rouzer Lane, Thurmont, Maryland, 20735.  Plaintiff Miller executed a promissory note to Nationstar Mortgage, LLC

which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

153.    Plaintiff Twan Rhyne is an individual and a resident of the State of Maryland. Plaintiff Rhyne owns the premises known as and located at 7015 Groverton Drive, Clinton, Maryland, 20735.  Plaintiff Rhyne executed a promissory note to Nationstar Mortgage, LLC which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

154.    Plaintiff Mark Trudeau is an individual and a resident of the State of New Jersey. Plaintiff Trudeau owns the premises known as and located at 741 Dakota Trail, Franklin Lakes, New Jersey, 07417.  Plaintiff Trudeau executed a promissory note to Nationstar Mortgage, LLC which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

155.    Plaintiff Jennifer L. Tete is an individual and a resident of the State of New Jersey.  Plaintiff Tete owns the premises known as and located at 604 Station Road, Roebling, New Jersey, 08554.  Plaintiff Tete executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

156.    Plaintiff Latonda Richardson is an individual and a resident of the State of South Carolina.  Plaintiff Richardson owns the premises known as and located at 419 Lyndhurst Road, Columbia, South Carolina, 29212.  Plaintiff Richardson executed a promissory note to Nationstar Mortgage, LLC, which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

157.    Plaintiff Angelita B. Rodriguez is an individual and a resident of the State of Texas.  Plaintiff Rodriguez owns the premises known as and located at 5915 Jerome Road, San Antonio, Texas, 78227.  Plaintiff Rodriguez executed a promissory note to Nationstar Mortgage, LLC, which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

158.    Plaintiff Myrei C. Edwards is an individual and a resident of the State of Texas.  Plaintiff Edwards owns the premises known as and located at 14922 El Tesoro Drive, houston, Texas, 77083.  Plaintiff Edwards executed a promissory note to Bank of America N.A., which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

159.    Plaintiff Pamela Tarzia-Tyler is an individual and a resident of the State of Virginia.  Plaintiff Tarzia-Tyler owns the premises known as and located at 416 Marc Drive, Spotsylvania, Virginia, 22551.  Plaintiff Tarzia-Tyler executed a promissory note to Nationstar Mortgage, LLC which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

160.    Plaintiff Christopher P. Nolan is an individual and a resident of the State of Florida.  Plaintiff Nolan owns the premises known as and located at 5511 SW 14th Avenue, Cape Coral, Florida, 33914.  Plaintiff Nolan executed a promissory note to Bank of America N.A. which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

161.    Plaintiff Robert Douglas is an individual and a resident of the State of Maryland.  Plaintiff Douglas owns the premises known as and located at 2431 W Mosher Street, Baltimore, Maryland, 21216.  Plaintiff Douglas executed a promissory note to Nationstar Mortgage, LLC

which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

162.    Plaintiff Darrin Bagwell is an individual and a resident of the State of Maryland. Plaintiff Bagwell owns the premises known as and located at 227 Lake Coventry Drive, Frederick, Maryland, 21702.  Plaintiff Bagwell executed a promissory note to Nationstar Mortgage, LLC which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

163.    Plaintiff Wayne Johnson is an individual and a resident of the State of Maryland. Plaintiff Johnson owns the premises known as and located at 7818 Solair Court, Pasadena, Maryland, 21122.  Plaintiff Johnson executed a promissory note to Bank of America N.A. which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

164.    Plaintiff Susan Sullivan is an individual and a resident of the State of Massachusetts.  Plaintiff S. Sullivan owns the premises known as and located at 42 River Street, Billerica, Massachusetts, 01821.  Plaintiff S. Sullivan executed a promissory note to Met Life Home Loans, LLC, which is secured by a mortgage against these premises.  Said mortgage is currently serviced by Defendant Nationstar Mortgage, LLC.

165.    Plaintiff Estelle C. Bervine is an individual and a resident of the State of Virginia. Plaintiff Bervine owns the premises known as and located at 12 Hyacinth Cou202 Evergreen Avenue, Richmond, Virginia, 23223.  Plaintiff Bervine executed a promissory note to Bank of America, N.A., which is secured by a mortgage against these premises. Said mortgage is currently serviced by Defendant M & T Bank Corporation.

166.    Plaintiffs' counsel is aware of and has provided services to unnamed ROE Plaintiffs, each of whom sustained actual injury.  The unnamed ROES sue under their names fictitiously because they either wish to maintain their privacy or because Plaintiffs' counsel have not completed the due diligence necessary to properly plead their claims as of the filing of this Complaint.  From time-to-time, upon conducting the due diligence and learning the information sufficient to add remaining ROE Plaintiffs to this action, Plaintiffs shall seek leave of Court to amend this Complaint to name these additional ROE Plaintiffs, or will follow such other process as is prescribed by the Court.

167.    An additional large number of persons have contacted Counsel or their staffs pertaining to the matters complained of herein.  In the event Plaintiffs believe it is in furtherance of judicial economy and justice to add all or any of these additional persons to this Complaint, Plaintiffs shall bring a noticed motion to add such parties to this action.

168.    In the event Plaintiffs file a separate lawsuit appertaining to all or any of these unnamed persons, or such further number as may exist in view of future developments, Plaintiffs shall file all appropriate Notices of Related Cases, or as otherwise directed by the Court.

169.    Defendant Bank of America, N.A. is a national banking association organized under the laws of the United States.  Defendant Bank of America, N.A. is located at 100 North Tryon Street, Charlotte, North Carolina 28202.

170.    Defendant Everhome Mortgage Company is a domestic company organized under the laws of California.  Defendant Everhome Mortgage Company is located at 8100 Nations Way, Jacksonville, Florida 32256.

171.    Defendant Green Tree Servicing, LLC is a domestic limited liability company organized under the laws of Florida.  Defendant Green Tree Servicing, LLC is located at 345 Saint Peter Street, Saint Paul, Minnesota 55102.

172.    Defendant Bayview Loan Servicing, LLC is a domestic limited liability company organized under the laws of Florida.  Defendant Bayview Loan Servicing, LLC is located at 4425 Ponce de Leon Boulevard, Coral Gables, Florida 33146.

173.    Defendant Nationstar Mortgage, LLC is a domestic limited liability company organized under the laws of Texas.  Defendant Nationstar Mortgage, LLC is located at 350 Highland Drive, Lewisville, Texas 75067.

174.    Defendant M&T Bank Corporation is a national banking association organized under the laws of the United States.  Defendant M&T Bank Corporation is located at One M&T Plaza, Buffalo, New York 14203.

175.    Defendant MetLife Bank, N.A. is a national banking association organized under the laws of the United States.  Defendant MetLife Bank, N.A. is located at 200 Park Avenue, New York, New York 10166.

## COUNT I

### Breach of Contract

176.    The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

177.    Plaintiffs had individual mortgages with Defendant Originators or their successors in interest, which were serviced by Defendant Servicers. After suffering financial problems and the eventual default of the terms of Plaintiffs' promissory notes, Plaintiffs requested loan modifications from Defendants.

178.    Defendants offered each of the Plaintiffs a modification pursuant to the completion of terms under a trial modification.  Plaintiffs each and every one of them, accepted the modification offer.

179.    Upon Plaintiffs' acceptance of Defendants' loan modification offers through performance as specified in the terms of Defendants' offer, a contract was formed, binding Defendants. See, e.g., Wigod v. Wells Fargo Bank, N.A., 673 F.3d 547 (7th Cir.2012); Corvello v. Wells Fargo Bank, NA, 11-16234, 2013 WL 4017279 (9th Cir. Aug. 8, 2013).

180.    Plaintiffs either met the conditions precedent by complying with all terms of the trial, beginning with providing all documentation as part of the modification application package, or were unable to do so because of Defendants' substantial interference.

181.    Defendants would often send multiple requests that Plaintiffs submit additional documents to Defendants, claiming documents were missing or not submitted, after Plaintiffs already provided the documents in question.  Defendants even provided conflicting information to individual Plaintiffs regarding what was allegedly received.

182.    These repetitive, unduly complicated, and burdensome requests occurred to interfere with Plaintiffs' loan modification application.   Plaintiffs again complied with Defendants' requests or attempted as best as possible in spite of Defendant's efforts to impede Plaintiff's compliance with their requirements under the modification agreement.

183.    Defendants often would not provide trial modification terms to Plaintiffs, citing Plaintiffs' alleged shortcomings in the modification process, or failure to meet financial criteria.

184.    Such denials of permanent modifications, are due to Defendants' overarching policies for the treatment of modification applications to, inter alia: (a) provide inconsistent and conflicting status updates to Plaintiffs; (b) fail to adequately train and supervise Defendants' loss

mitigation representatives to conduct proper and timely document intake; (c) utilize a manipulated NPV calculation when assessing loan modification applications against Defendants' income from foreclosure sale of Plaintiffs' homes.

185.   When Plaintiffs were able to satisfy certain conditions according to Defendants, Plaintiffs were given trial modification payment terms.  Defendants invariably promised that the furnishing of the necessary trial payments constituted an additional condition precedent pursuant to the modification agreement, the performance of which would result in a permanent modification.

186.   Plaintiffs made the monthly trial payments pursuant to the loan modification agreement offered by Defendants.

187.   Following Plaintiffs' completion of all conditions precedent, Defendants refused to comply with the loan modification agreements and provide permanent modification as contracted upon.

188.   Defendants had a contractual obligation to modify Plaintiffs' loans but breached the terms of their loan modification agreements with Plaintiffs.  Defendants systematically deprived Plaintiffs the contracted-upon loan modifications, while benefiting from their Credit Default Swaps.  These removed the incentive to work with Plaintiffs to obtain modifications.

189.   Defendants have denied or failed to provide Plaintiffs loan modifications and instead, have generated profit for themselves by continuing to charge excessive late and default fees and interest.

190.   As a direct and proximate result of Defendants' breach of their loan modification agreements, Plaintiffs suffered damages and are threatened with additional harm, in an amount to be determined at trial. Such damages include, inter alia: loss of home; damage to their credit

standing; payment of undeserved fees and penalties; trial payments toward a modification that nevertheless ended in foreclosure; and loss of opportunity to sell the properties prior to foreclosure.

## COUNT II

### Breach of the Implied Covenant of Good Faith and Fair Dealing

191.    The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

192.    Every contract imposes upon each party a duty of good faith and fair dealing in the performance of the contract, which requires that neither party infringe on the other party's rights to the benefits of the agreements or to deprive the other party of the benefits of the contract.

193.    Defendants breached the implied covenant of good faith and fair dealing contained in their loan modification agreements.

194.    Defendants further breached the implied covenant of good faith and fair dealing by, *inter alia*:

  A.  Failing to make a good faith effort to fulfill Defendants' contractual obligations, written and implied promises, and loan servicing functions;

  B.  Demanding the same documents be sent on multiple occasions, delaying processing of documents, and knowingly allocating insufficient resources to train competent and knowledgeable staff in order to ensure accurate and timely processing of loan modification requests; and

  C.  Demanding late fees, interest and other delinquency related fees from Plaintiff in excess of what they could reasonably pay.

195.    As a direct result of Defendants' breaches of the implied covenant of good faith and fair dealing, Plaintiffs suffered damages in an amount to be determined at trial.

## COUNT III

### Promissory Estoppel

196.    The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

197.    Defendants intentionally induced Plaintiffs to go into default in order to qualify for their loan modification programs.

198.    Defendants intentionally misrepresented, in person and through marketing materials, an intent to modify home mortgages, the true purpose of which was to shepherd homeowners into foreclosure.

199.    Defendants then represented that Plaintiffs were approved for loan modifications, and that Plaintiffs could make modified, reduced payments that would satisfy existing loan obligations for the terms set forth in the loan modification agreements.

200.    Defendants intentionally induced Plaintiffs to rely on their representations concerning their loan modification programs and to make the modified payments.

201.    Plaintiffs' reliance was reasonable in light of Defendants' representations regarding its loan modification program.

202.    Plaintiffs relied on the representations of Defendants to their detriment, resulting in, inter alia: loss of home; damage to their credit standing; payment of undeserved fees and penalties; trial payments toward a modification that nevertheless ended in foreclosure; and loss of opportunity to sell the properties prior to foreclosure.

## COUNT IV

### Fraudulent Concealment

203.    The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

204.    Defendants used fraud and artifice to lure Plaintiffs into defaulting on their mortgages by promising future opportunities for loan modifications when they had no intention of providing such permanent modifications.

205.    Once Defendants guided Plaintiffs into default, Defendants were able to collect upon their CDS/CDO holdings, which allow Defendants to collect on every loan that results in foreclosure.

206.    Relying on these policies, Defendants failed to provide permanent modifications for the entitled Plaintiffs and encouraged default on their loans.  By hedging against each of the Plaintiffs through taking out CDS/CDO on every loan serviced, Defendants were able to profit at the expense of Plaintiffs.

207.    Defendants' financial interest in seeing Plaintiffs remain in default on their mortgages rather than offer a modification, after conveying to Plaintiffs that one would be given, was intentionally concealed from Plaintiffs.

208.    These withheld facts and circumstances described herein should have been disclosed by Defendants.  Such details were material to Plaintiff's analysis when determining whether to enter into a loan transaction with the Defendants.  Had Defendants disclosed this information, Plaintiffs would have decided differently.

209.    These concealed facts and circumstances were known to Defendants at the time they were hidden from Plaintiffs.

210.    Defendants were aware at the time of the suppression of information that this concealment would induce Plaintiffs to act in a way that was injurious, while at the same time being profitable and advantageous to Defendants.

211.    By concealing this information, Defendants intended to induce Plaintiffs to alter their positions to their harm.

212.    In each of the foregoing occurrences, Defendants possessed and utilized their superior knowledge and bargaining position to the detriment of Plaintiffs.

213.    Plaintiffs justifiably and reasonably relied on the fraudulent concealment created by Defendants' suppression of information.

214.    Defendants' profits from the CDS/CDO, combined with their receipt of money from Plaintiffs in the form of trial modification payments, represent a windfall gained by the Defendants.

215.    Plaintiffs relied on the representations of Defendants to their detriment, resulting in, inter alia: loss of home; damage to their credit standing; payment of undeserved fees and penalties; trial payments toward a modification that nevertheless ended in foreclosure; and loss of opportunity to sell the properties prior to foreclosure.

216.    These acts were malicious, and performed with a wanton disregard for Plaintiffs' legal rights.  Plaintiffs are therefore further entitled to punitive damages.

**COUNT V**

**Fraud for Demanding and Collecting Monthly**
**Note Payments under False Pretenses**

217.    The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

218.    Upon information and belief, starting as early as the formation and securitization of the notes, and up to and including the last date of payments by the Plaintiffs, Defendants and their agents, predecessors, and successors-in-interest made false representations of material fact by demanding, and thereafter collecting payments on the notes from the Plaintiffs.

219.    Defendants, including the successors-in-interest to Plaintiffs' original lenders, are not the owners, nor in possession of promissory notes executed by the Defendants, where notes were assigned by their payees, directly or indirectly, to one or more underwriters and Real Estate Mortgage Investment Conduit (REMIC) trustees and servicers for securitization.  A REMIC is an entity that holds a fixed pool of mortgages and issues multiple classes of interests in itself to investors, which allows for the issuance of mortgage-backed securities pursuant to 26 USC § 860D.

220.    Due to this securitization process, including the possibility of unrelated assignments of, borrowing against, and pledging of the notes by Wall Street financial institutions, it is not clear to the Plaintiffs who owns their notes.

221.    Various purported assignments of Plaintiffs' notes allegedly occurred among Defendants and others in the securitization of the loan, including an assignment of the notes from its original payee to one or more depositors (i.e., note bundlers for resale), underwriters, syndicate managers, and then to a REMIC trustee, and possibly one or more loan servicers, special servicers or master servicers.

222.    Also, upon information and belief, the notes were assigned to one or more financial institutions, lenders or others as security or payment in one or more transactions unrelated to the Plaintiffs.

223.    Each of the note assignments was governed by an underwriting agreement and a Pooling and Servicing Agreement ("PSA"), which is governed by and to be construed under New York law, and Internal Revenue Code rules relating to REMIC rules (prohibiting assignments of notes to or from the trust except under limited circumstances and date ranges).

224.    The documentary evidence and witnesses needed by the Plaintiffs to determine the ownership of their individual notes are maintained by Defendants, including the underwriting agreement, the PSA, the various transactions pursuant to which the notes was securitized, all transactions involving the notes with the REMIC trustee, any of the servicers; and witnesses to the various stages of securitization and assignments of the notes by the underwriters, REMIC trustee, and servicers.

225.    To ascertain the specific securitization of each loan, it is essential to determine the chain of ownership in the secondary market, and the pool into which it was sold. This can only be done by accessing the PSA, which is not accessible absent discovery.

226.    Each time Defendants or their agents, predecessors, or successors-in-interest sent their monthly statement to the Plaintiffs, they represented, impliedly or literally, that they had the right to demand and collect such monthly payments on their notes.

227.    Upon information and belief, each such representation was a false representation of material fact.

228.    These representations of material fact were made knowingly and for the purpose of inducing the Plaintiffs to make the monthly note payments to Defendants.

229.    Defendants and their agents acted with scienter, and intended that the Plaintiffs rely on the misrepresentations.

230.    Defendants and their agents knew the representations to be false at the time they were made to the Plaintiffs.

231.    Plaintiffs reasonably relied on these false representations made by Defendants and their agents to their detriment when making payments on the notes believing the payments were being made to or for the benefit of the owner of the notes.  This occurred between their formation dates and the dates Plaintiffs ceased making payments.  At that time, Plaintiffs realized from securitization publicity that Defendants and their agents were probably not in the chain of title for, and do not own, their notes.

232.    Defendants and their agents collected payments resulting from the Plaintiffs' reasonable reliance despite knowing that they were not, and are not, and were not representing, the rightful owner in possession of the notes, and thus, were not, and are not, in fact entitled to collect such payments from the Plaintiffs.

233.    The payments to be made by the Plaintiffs were demanded by Defendants and their agents under false pretense.

234.    The Plaintiffs have been injured by their reasonable reliance to the extent of their payments on the notes to Defendants and their agents, who are not the owners, nor in possession of the notes, and do not represent the owner or possessor of such, and as a result, are not in fact entitled to collect payment for such notes.

235.    In light of these actions by Defendants and their agents, the Plaintiffs are entitled to a refund of all payments made by them to Defendants and their agents after securitization of the notes, an amount to be determined by the Court, plus pre-judgment interest.

### COUNT VI

### <u>Violations of State Consumer Protection Statutes</u>

236.    The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

237.    Plaintiffs are "consumers" as defined in their respective state consumer protection statutes.

238.    The activities of Defendants as alleged in the preceding causes of action constitute deceptive acts and practices in the conduct of Defendants' business and furnishing of services.

239.    The Defendants omitted a material fact from Plaintiffs by failing to state that their mortgages would be assigned, or insured and bundled, in such a way that the banks' interest would conflict with Plaintiffs' in the event they needed a forbearance or modification agreement, regardless of Plaintiffs' qualifications.  This is one of the primary obligations of the lending bank under law and industry custom and usage, and part of Defendants' implied covenant of good faith and fair dealing with the Plaintiffs.

240.    In addition to maintaining a fraudulent modification program, Defendants repeatedly acted in a predatory fashion when offering certain loans to Plaintiffs and consumers at large.  Defendants hid the true costs of credit for the mortgages by failing to deliver the Federally required disclosures to Plaintiffs, and misrepresenting numerous other critical and material aspects of financing transactions.  In particular:

    A. Defendant Originators and Servicers intentionally misrepresented, in person and through marketing materials, an intent to modify home mortgages, the true purpose of which was to shepherd homeowners into foreclosure. Defendants accomplished such goals by demanding the same documents be sent on multiple occasions, delaying processing of documents, and knowingly allocating

insufficient resources to train competent and knowledgeable staff in order to ensure accurate and timely processing of loan modification requests.

B. Defendant Originators misrepresented that certain Plaintiffs could afford the monthly payments on an adjustable-rate loan, when the payments would drastically increase beyond Plaintiffs' means absent some unforeseeable drastic increase in their income, or provided incorrect information to Plaintiffs regarding the fixed interest rate loan terms.

C. Defendant Originators required insufficient financial documentation, or disregarded critical aspects of Plaintiffs' loan applications, to adequately determine a borrower's income and financial capability to make all payments through the life of a loan, when approving Plaintiffs for a mortgage.

D. Defendant Originators encouraged exaggerated incomes of certain Plaintiffs because Defendants' underwriting guidelines permitted them to lend more money that way, allowing Defendants to garner more interest than would otherwise have been possible.

E. Defendant Originators failed to disclose escrow charges for taxes and insurance from Plaintiffs' disclosed monthly mortgage payment to make the payment seem more affordable.

F. Defendant Originators and Servicers collateralized mortgage loans that Plaintiffs could not afford to service, which amounts to improper asset-based lending.

G. Defendant Originators inappropriately made assurances regarding the stability of the housing market, and grossly exaggerated expected growth in housing prices. Plaintiffs were induced to accept loan terms because there would always be an

option to sell their homes at a profit, or else refinance it under more favorable terms.

H.   Defendant Originators purposefully failed to disclose how a negative-amortization loan works, in particular how the unpaid interest is added to the principal amount, causing it to drastically increase.

I.   Defendant Originators failed to adequately disclose how an adjustable rate loan operates in that it has monthly payments that continue to rise over the life of the loan.

241.   Defendants' acts and misrepresentations constitute acts, uses, or employment by Defendants and their agents of deception, fraud, unconscionable and unfair commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression, or omission of material facts with the intent that others rely upon such concealment.

242.   Defendants' unfair and deceptive trade acts and practices have directly, foreseeably, and proximately caused damages and injury to Plaintiffs and consumers at large. Such damages include, *inter alia*: loss of home; damage to their credit standing; payment of undeserved fees and penalties; trial payments toward a modification that nevertheless ended in foreclosure; and loss of opportunity to sell the properties prior to foreclosure.

243.   Plaintiffs relied to their detriment on the deceptive acts and practices, and have no adequate remedy at law.

244.   Plaintiffs assert claims for violations of their respective specific state consumer protection laws against Defendants, their successors-in-interest, agents, employees, or others with whom they acted in concert, have acted in some control or capacity over the origination, processing, and/or servicing of the Plaintiffs' loans.

245.    Such state consumer protection laws were enacted by the several states to provide a private right of action for violations generally specified in the Federal Trade Commission Act, 15 USC § 45(a).

246.    Plaintiffs Edwin Jones and Elizabeth Jones assert claims under Alabama Code Title 8 §§ 8-19-5 and 8-19-10.

247.    Plaintiff Set Garcia asserts claims under Arizona Revised Statutes §§ 44-1522 and 44-1533.

248.    Plaintiff William M. Milmon asserts claims under Arkansas Statutes §§ 4-88-107 and 4-88-113.

249.    Plaintiffs Robert J. Battinieri Jr. and Cherrywood Reid assert claims under Delaware Code Title 6 §§ 2532 and 2533.

250.    Plaintiffs Son T. Diep, Mary Ann Porter, Sabrina Taylor, Marcia L. Roberson-Fields, Marie J. Blain, Carlos Zambrana, Varene Williams, and Christopher P. Nolan assert claims under Florida Statutes §§ 501.204 and 501.211.

251.    Plaintiffs Terry Hack, Tammy Haack, Patty Sturdivant, Latravius Smith, Kenneth E. Hill, and Margaret Jones assert claims under Georgia Code §§ 10-1-393 and 10-1-399.

252.    Plaintiffs Ruth Cowles, Mary K. Karklins, Denise Hardy, Juan Lozada, Lynette Mccoy, Bruce A. Clifton, Henry Walker, Steven Fields and Jacki L. Fields assert claims under Illinois Compiled Statutes §§ 815 ILCS 505/2 and 815 ILCS 505/10a.

253.    Plaintiffs Andrea Russell, Irene Tsilimos, Matthew Hoff, and Mark A. Smith assert claims under Indiana Code §§ 24-5-0.5-3 and 24-5-0.5-4.

254.    Plaintiff Angela Coleman asserts claims under Kansas §§ 50-626, 50-627 and 50-634.

255.    Plaintiff Michael Todd Irvan asserts claims under Kentucky Rev. Stat. §§ 367-170, 367-175, and 367-220.

256.    Plaintiffs Erander M. Guss, Gerald Romar, and Alphonse Harris JR. assert claims under Louisiana Revised Statutes §§ 51:1405 and 51:1409.

257.    Plaintiff Gary Belanger asserts claims under Maine Revised Statute §§5-207 and 5-213.

258.    Plaintiffs Marjorie Ann Caesar, Michael Roberts, Martha Roberts, Deborah Francis Gavin, Bolanle Tomiye, Kevin Martin, Brenda Martin, Leroy Stover, Cheryl, Harrison-Murray, Richard K. Thompson, Mayra D. Sucre-Valdes, Angela Gordon, Bradley Evans, Wayne Johnson, Andrea Hall Bell, Thomas Miller, Twan Rhyne, Robert Douglas, and Darrin Bagwell assert claims under Maryland Statutes §§ 13-301 and 13-408.

259.    Plaintiffs Martino Palladino, Giovanna Palladino, Bianca Robinson, Lynn Yaichner and Susan Sullivan assert claims under General Laws of Massachusetts Chap. 93A §§ 2 and 9.

260.    Plaintiffs Lashawn Robinson and Winifred Wafer assert claims under Michigan Compiled Laws §§ 445.903 and 445.911.

261.    Plaintiff Ronald F. Marquardt asserts claims under Montana Statutes §§ 30-14-103 and §30-14-132

262.    Plaintiff Matthew Lindsey asserts claims under Nevada Revised Statutes §§ 119.330, 482.351, 598.0915, et seq., and 41.600.

263.    Plaintiffs John Sangis, James Brosious, Hector L. Lebron, Ralph Saro, Shanise L. Callahan, Mark Trudeau, and Jennifer L. Tete assert claims under New Jersey Statutes §§ 56:8-2, 56:8-2.11, 56:8-2.12, and 56:8-2.13.

264.     Plaintiffs Nicholas D'Angelis, Charlie Hollingsworth, Rosita Scarlett, and Marinus Francois assert claims under New York General Business Law § 349.

265.     Plaintiffs Leslie Williamson, Mark Williamson, John T. Lassiter, Eddie McIntyre, Geno Bobo, and Angela Hartis asserts claims under North Carolina General Statutes §§ 75-1.1, 75-16, and 75-16.1.

266.     Plaintiff Paul D. Waklee asserts claims under North Dakota Statute § 51-10-03

267.     Plaintiff Christophe Senah asserts claims under Oregon Revised Statutes §§ 646.608 and 646.638.

268.     Plaintiff Harry D. Leiphart asserts claims under Pennsylvania Statutes 73 P.S. §§ 201-2, 201-3, and 201-9.2.

269.     Plaintiffs James Bevan, Roger Gaffney, Tina Gaffney, Jonathan Samuel, Bertha Samuel, Brian Farley, and Latonda Richardson assert claims under South Carolina Code of Laws §§ 39-5-20 and 39-5-140.

270.     Plaintiffs Jacqueline Darby-Jones, Santosha Jackson, Tyrone Jackson, Laurna Legree, Arthur Satterwhite, Monica Smith, John Smith, Derwin West, Thomas Frankye, Angelita B. Rodriguez, and Myrei C. Edwards assert claims under Texas Statutes §§ 17.46 and 17.50.

271.     Plaintiffs Michael Jones, Hermenegilda Jones, Alisha Medina, Alicia Powell, Pamela Tarzia-Tyler, and Estelle C. Bervine assert claims under Code of Virginia §§ 59.1-200 and 59.1-204.

272.     Plaintiffs Adele M. Starkovich and Alanka Hankerson arrest claims under Revised Code of Washington §§ 19.86.020 and 19.86.090.

273.     Plaintiff Rodney Richards Asserts claims under West Virginia Code §33-11-3.

274.    Under the afore-mentioned state statutes, the Plaintiffs are entitled to and request a preliminary and permanent injunction against Defendants to order it to stop these unlawful practices, and for an award of actual damages caused to the Plaintiffs, in an amount to be determined by the Court, and the statutory relief provided by said laws upon a finding that Defendants acted willfully and knowingly to violate these provisions of law.  Also, Plaintiffs are entitled to an award of attorney's fees and any other and further relief as this Court deems just and proper.

## COUNT VII

## Violations of the Federal Truth in Lending Act

275.    The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

276.    At the time of each of the transactions between the Defendants and individual Plaintiffs, Defendant lenders, and their successors-in-interest, acted as a creditor who regularly engaged in the making of mortgage loans, payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, whether in connection with loans, sales of property or services, or otherwise.  Accordingly, Defendants are subject to the Federal Truth-In-Lending Act (hereinafter "TILA"), 15 USC §§ 1601 et seq., and its implementing regulations, Federal Reserve Board Regulation Z (hereinafter "Regulation Z"), 12 CFR § 226.

277.    As a result of the subject transactions, Defendants acquired an interest in Plaintiffs' homes that secures payment or performance of an obligation.

278.    Upon information and belief, in the course of the subject consumer credit transactions described above, Defendants violated the disclosure requirements of TILA and

Regulation Z regarding the mortgages given by Plaintiffs, by failing to disclose to Plaintiff material terms at the time of and leading up to closing of titles.

279.   Defendants failed to disclose properly and accurately the amount financed, in violation of 15 U.S.C. § 1638(a)(2) and 12 C.F.R. §§ 226.18(b) & 226.4.

280.   Defendants failed to disclose properly and accurately the finance charge fees payable to third parties that were not bona fide or reasonable in amount, as required by 15 U.S.C § 1638(a)(3) and 12 C.F.R. §§ 226.18(d) & 226.4;

281.   Defendants failed to disclose properly and accurately the "annual percentage rate" in violation of 15 U.S.C. § 1638(a)(4) and 12 C.F.R. § 226.18(e).

282.   Defendants failed to disclose properly and accurately the variable rate in violation of 15 U.S.C. § 1638(a)(14) and 12 C.F.R. § 226.18(f).

283.   Defendants failed to disclose properly and accurately the "total of payments" in violation of 15 U.S.C. § 1638(a)(5) and 12 C.F.R. § 226.18(h).

284.   Defendants failed to disclose properly and accurately the number, amount, and due dates or period or payments scheduled to repay the obligation in violation of U.S.C. § 1638(a)(6) and 12 C.F.R. § 226.18(g).

285.   Defendants failed to disclose that a security interest was taken in the subject properties in violation of U.S.C. § 1638(a)(9) and 12 C.F.R. § 226.18(m).

286.   As a direct and proximate result of Defendants' failure to disclose, Plaintiffs entered into mortgage agreements with binding terms to their detriment, which would not have been agreed upon but for the TILA violations committed by Defendants.

## COUNT VIII

## **Unjust Enrichment**

287.    The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

288.    Through their conduct described herein, Defendants were unjustly enriched at the expense of each of the Plaintiffs by taking their money under false pretenses in the form of trial modification payments.

289.    While the trial payments may at times have technically been credited against the remaining principal of Plaintiffs' loans, Defendants led the Plaintiffs to believe making the trial modification payments was a necessary step, and if completed meant Defendants would provide a permanent modification.  However, because of Defendants' dual-track process and flagrant shortcomings in their modification processing protocols, Plaintiffs' permanent modifications were destined to be rejected despite their compliance with the modification agreement.

290.    Defendants encouraged the furnishing of trial payments and were more than willing to accept the modification payments, yet were already anticipating breaching the permanent modification agreement for above-mentioned reasons.

291.    Defendants were merely trying to strip as much equity as possible from the Plaintiffs before trying to take their homes through an eventual foreclosure, despite Plaintiffs' completion of requirements pursuant to a modification contract.

292.    Plaintiffs would not have made these trial payments had they known Defendants were internally guiding them towards foreclosure, regardless of terms earlier agreed upon.

293.    The Defendants also owe the Plaintiffs a legal and equitable duty to account for the losses suffered by Plaintiffs due to Defendants' fraudulent collection of monthly mortgage payments under false pretenses and Defendants' failure to make restitution therefore.

294.    Furthermore, Defendants took final possession of some Plaintiffs' homes through foreclosure and severely and permanently deprived Plaintiffs of not only the equity remaining in their homes but of their actual physical residence following Defendants' refusal to comply with the terms of their modification agreements.

295.    To permit the Defendants to retain their unjust gains would be against equity and good conscience, and would ratify the illegal actions taken by the Defendants to the detriment of the Plaintiffs.

296.    In order to avoid the unjust enrichment and equity stripping practices of the Defendants, they should be ordered to pay back to each Plaintiff any and all monies unjustly received from him or her.  Such damages, including months of surreptitiously accepted trial payments should be determined at trial.

## COUNT IX

### Fraud in the Inducement

297.    The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

298.    Defendants fraudulently induced Plaintiffs to enter into unduly burdensome mortgage loans by misrepresenting or withholding material information.  In particular:

A. Defendants misrepresented that certain Plaintiffs could afford the monthly payments on an adjustable-rate loan, when the payments would drastically increase beyond Plaintiffs' means absent some unforeseeable drastic increase in their income, or provided incorrect information to Plaintiffs regarding the fixed interest rate loan terms.

B. Required insufficient financial documentation, or disregarded critical aspects of Plaintiffs' loan applications, to adequately determine a borrower's income and financial capability to make all payments through the life of a loan, when approving Plaintiffs for a mortgage.

C. Tolerated exaggerated incomes of certain Plaintiffs because Defendants' underwriting guidelines permitted them to lend more money, allowing Defendants to garner more interest than would otherwise have been possible.

D. Failed to disclose escrow charges for taxes and insurance from Plaintiffs' disclosed monthly mortgage payment to make the payment seem more affordable.

E. Offered mortgage loans that Plaintiffs could not afford to service, but were nonetheless made, because Defendants adequately collateralized such loans, which amounts to improper asset-based lending.

F. Inappropriately made assurances regarding not only the stability of the housing market, and grossly exaggerated expected growth in housing prices.  Plaintiffs were induced to accept loan terms because there would always be an option to sell their homes at a profit, or else refinance it with more favorable terms.

G. Failed to disclose how a negative-amortization loan works, in particular how the unpaid interest is added to the principal amount, causing it to drastically increase.

H. Failed to adequately disclose how an adjustable rate loan operates in that it has monthly payments that continue to rise over the life of the loan.

299.    Upon information and belief, each such representation was a false representation of material fact.

300. These representations of material fact were made knowingly and for the purpose of inducing the Plaintiffs to make the monthly note payments to Defendants.

301. Defendants and their servicers and agents acted with scienter, and intended that the Plaintiffs rely on the representations.

302. Defendants and their agents and servicers knew the representations to be false at the time they were made to the Plaintiffs.

303. Plaintiffs reasonably relied on these false representations made by Defendants and their agents and servicers to their detriment when accepting certain terms on their home mortgage loans.

304. As a proximate result of Defendants' misrepresentations, Plaintiffs have suffered financial loss and severe mental anguish and emotional distress over facing the possible loss of their homes through foreclosure.

## COUNT X

### Violations of the Real Estate Settlement Procedures Act

305. The allegations contained in each paragraph set forth above in this Complaint are re-alleged and incorporated by reference as if fully set forth herein.

306. The subject transactions described above are, at most, federally related mortgage loans as defined in 12 USC § 2602(1), and therefore are subject to the Real Estate Settlement Procedures Act (hereinafter "RESPA"), 12 USC §§ 2601 et seq.

307. RESPA prohibits any unearned fees, such that "[n]o person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed" pursuant to 12 USC § 2607(a).

308.    On information and belief, Defendants violated RESPA when engaging with Plaintiffs, in that Defendants gave improper incentive kickbacks or premiums to loan officers and brokers in exchange for marketing and signing Plaintiffs to certain loans including those with adjustable rate terms, when they were not viable candidates, solely so Defendants could garner greater interest from plaintiffs.

309.    Prior to Plaintiffs home purchase closings, Defendants did not provide all necessary disclosures including a clear itemization of all charges imposed upon the borrower pursuant to 12 USC § 2603, or the required explanation of material terms including payments, penalties, prepayments, charges, appraisals, and costs pursuant to 12 USC § 2604(b)(1).

310.    Defendants also acted in defiance of 12 USC § 2605(e) by taking no action concerning the inquiries submitted with Plaintiffs' Qualified Written Request.  Defendants did nothing to resolve Plaintiffs' complaints over a failure to disclose information prior to closing, predatory lending practices and other abuses including accounting and ownership issues of the note payments.

311.    Defendants also did not provide any of the information requested such that Plaintiffs' could conduct their own investigation into the matters.  In the absence of Defendants' failure to take action to address these issues, Defendants have also not provided an adequate explanation for their refusal to do so.

312.    As a proximate result of Defendants' violations, Plaintiffs have suffered financial loss and severe mental anguish and emotional distress over facing the possible loss of their homes through foreclosure.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiffs pray the Court for the following relief against Defendants:

A.      An order declaring that Defendants' alleged acts and practices constitute a breach of contract;

B.      An order for Defendants' specific performance of their contractual obligations together with other relief required by contract law;

C.      An order declaring that Defendants are required under the doctrine of promissory estoppel to honor the loan modifications with Plaintiffs on terms represented in their loan modification agreements or rules of equity with Defendants;

D.      An injunction enjoining Defendants permanently from collecting on Plaintiffs' notes, which are backed by mortgages held by Defendants;

E.      Restitution to Plaintiffs and actual damages for injuries suffered by Plaintiffs, equity removed for foreclosed properties, and payments not entitled to be received by Defendants;

F.      Restitution to Plaintiffs for mental anguish and emotional distress suffered by Plaintiffs as a result of Defendants' fraudulent modification practice which exists to direct borrowers towards foreclosure, and induce Plaintiffs to enter into less than desirable loans;

G.      Actual and statutory damages pursuant to the various state consumer protection statutes;

H.      Actual damages resulting from Defendants' TILA violations;

I.      Actual damages resulting from Defendants' RESPA violations and additional damages as the Court may allow in an amount not to exceed $2,000.00 per Plaintiff, for violations of 12 USC § 2605(e) and treble damages pursuant to 12 USC § 2607

J.      Reasonable attorney's fees and costs of this action, statutory pre-judgment interest, and such other relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand trial by jury to the extent authorized by law.


Dated:          October 2, 2013
                Brooklyn, New York      _____
                                        Michael E. Herskowitz, Esq.
                                        Michael A. Lehrman, Esq.
                                        *Of Counsel to*
                                        THE HOFFMAN LAW GROUP, P.A.
                                        1999 Flatbush Avenue, Suite 201
                                        Brooklyn, New York 11234
                                        Tel: (718) 998-5088

                                        *Attorneys for the Plaintiffs*